## S. M. FIELDS, etc., Respondent, v. GERMAN AMERICAN INSURANCE COMPANY, Appellant.

St. Louis Court of Appeals, June 8, 1909.

1. **INSURANCE: Other Insurance: Waiver.** A fire insurance policy, which contains a provision that it shall be void if the insured shall procure any other insurance on the property covered by that policy, will not be declared forfeited, after loss, on the ground that insured procured other insurance, when the agent of the insurer who wrote the policy was notified, at the time the policy was issued, that other insurance was then in force on said property and he made no objection on that score.

2. ————: **Change of Title: Waiver.** Where one of the members of a firm, which held a fire insurance policy, sold his interest in the firm to the other members of the firm, and the agent of the insurer was notified of this fact, but neither asserted a forfeiture nor even objected to the change of ownership, a forfeiture of said policy on the ground of change of ownership will not be declared, after loss.

3. ————: **False Testimony by One of the Insured.** In an action on a fire insurance policy which had been assigned to plaintiff and which contained a stipulation that it should be

void if insured misrepresented or concealed any material fact
or circumstance, or in case of fraud or false swearing touching
a matter relating to the insurance, a recovery by plaintiff
will not be defeated because a person who was a member of
the assignor firm may have testified falsely on the witness
stand.

4. ————: **Error in Posting Books of Account.** A fire insurance
policy, which provides that insured shall keep a set of books,
showing purchases and sales, is not vitiated by reason of the
fact that an item of purchase, by mistake, was posted in the
books as $4,903, instead of $3,903.69.

Appeal from Ste. Genevieve Circuit Court.—*Hon.*
*Chas. A. Killian,* Judge.

AFFIRMED.

*T. B. Whitledge, P. H. Cullen, Thos. T. Fauntleroy*
and *Shepard Barclay* for appellant.

(1) The court erred in refusing to instruct for
a verdict for defendant on the facts in the evidence.
The burden of proof is on plaintiff as to amount of
the loss and value of the goods destroyed. Summers
v. Insurance Co., 53 Mo. App. 523; Trask v. Insurance
Co., 53 Mo. App. 630. (2) There was a total failure
to prove the contract as alleged with plaintiff's as-
signors, when the proof showed the contract was with
said assignors and another person, Mr. Williams. The
contract proved is not the one alleged, but is fatally
different. Laclede Co. v. Iron Works, 169 Mo. 154;
Cole v. Armour, 154 Mo. 350; Cosgrove v. Leonard,
175 Mo. 111; Johnson v. Stock Yards, 102 Mo. App.
395. The proof shows the loss is not total (when it
was alleged to be total) and where the loss is not total,
there must be apportionment among the insurers by
the terms of the policy and on these admitted facts
there was a failure of proof. McIntyre v. Insurance
Co., 131 Mo. App. 88. (3) The policy is not to be deemed
a valued one where plaintiff does not prove that the
goods destroyed are the same as those on hand when the

insurance was effected. Stevens v. Insurance Co., 120 Mo. App. 88; Summers v. Insurance Co., 53 Mo. App. 524. (4) It affirmatively appears that the assured failed to keep the books required by the policy. Hollenbeck v. Insurance Co., 133 Mo. App. 60; Everett Co. v. Insurance Co., 121 Ga. 228; Insurance Co. v. Luther, 109 S. W. 1022; Pearlman v. Surety Co., 111 N. Y. S. 882. A list of credit sales merely is not a compliance, as has been already held. Gillum v. Fire Assn., 106 Mo. App. 673. (5) And where, for a period, no account of cash sales is kept (as here), there can be no recovery on such a policy. Johnson v. Insurance Co., 120 Mo. App. 80. (6) Where insured kept his last inventory, and a record containing the totals of daily cash sales (no goods being received since the inventory) the court held he could not recover on account of his failure to comply with the book and inventory clause of such a policy. Insurance Co. v. Dudley, 65 Ark. 240. (7) The section 7979 is void because an attempt to delegate legislative power to the insurance commissioner. O'Neil v. Insurance Co., 166 Pa. St. 72; Dowling v. Insurance Co., 92 Wis. 63; Anderson v. Assurance Co., 59 Minn. 191; Field v. Clark, 143 U. S. 650. The whole section must stand or fall together, as the parts thereof are all closely associated and depend on each other. Cooley, Const. Lim. (6th Ed.), 211-2; State v. Bengsch, 170 Mo. 114. The Supreme Court has distinctly intimated and clearly assumed that the Missouri law, giving a valued policy effect to fire insurance contracts, is applicable only to realty. King v. Insurance Co., 195 Mo. 301. The petition does not claim the effect of a valued policy, but asserts that the interest of plaintiff's assignors, as "owners," was to an amount "far exceeding the amount of insurance." Whereas the policy requires pro rata apportionment among the insurers, which rule was ignored in the verdict which, for that reason, is excessive as assigned in the motion for new trial. (8) The verdict for

$1,590 is excessive from every standpoint. (9) The refusal of the instruction as to false swearing was error, by reason of the terms of the policy, on that subject. Those terms declared that the policy is void in the event of false swearing of the assured before or after the loss. Hamberg v. Insurance Co., 68 Minn. 335. False swearing as to one item avoids the policy. Rovinsky v. Insurance Co., 100 Maine 112; Fowler v. Insurance Co., 35 Ore. 559. The so-called "Ledger for 1905" was not sufficiently proven. No one verified its entries or those in the other books, and they hence were inadmissible. It was error to admit them in evidence. Smith v. Smith, 163 N. Y. 168; Chaffee v. U. S., 18 Wall. 516; Martin v. Nichols, 54 Mo. App. 597; Nelson v. Nelson, 90 Mo. 460. Such books do not prove themselves; knowledge of the transactions or other circumstances of identification are essential; and all are wanting here. Lumbering Co. v. Hewitt, 64 Fed. 318; 1 Green., Evid., sec. 120.

*Conran & Gallivan* for respondent.

Action on a contract of fire insurance to recover $1,500 as defendant's proportion of the liability for damage done to the insured property by a fire. The policy ran from November 7, 1904, for one year, on a stock of general merchandise contained in a two-story frame building, standing on lot 6, block 5, in the town of Parma, Missouri. The policy was issued to F. P. Wrather & Company, and was assigned by F. P. Wrather, T. B. Wrather and L. C. Jones, composing said firm, to plaintiff after the fire occurred. The petition is in the usual form, alleges the facts *supra,* and says a fire occurred and destroyed the stock on July 4, 1905, while the policy was in force, plaintiff's assignors complied with all the conditions required of them by the terms of the policy, and in due

time after the fire, and sixty days before the commencement of this action, gave defendant due notice of the loss, demanding payment, and defendant refused to pay. The answer began with a denial of such allegations of the petition as are not afterwards admitted, then admitted defendant issued the policy to F. P. Wrather & Co. for $1,500 on a stock of merchandise, denied its assignment by said firm to plaintiff after the fire, denied the firm, when the policy was issued and at all times afterwards to the occurrence of the fire, had an interest in the insured property as owners thereof, exceeding the insurance on the stock; denied the fire occurred on July 4, 1905, while the policy was in force, and while the merchandise was in said house; denied said stock was destroyed by fire, but admitted the stock and fixtures in the building were damaged by a fire; denied F. P. Wrather & Company performed all the conditions required of them or gave defendant notice of the fire and loss more than sixty days before the commencement of this action, demanded payment of the sum insured or furnished proof of loss as required by the contract. The answer next states certain terms of the policy, to-wit, that the insured would take an itemized inventory of the stock at least once in each calendar year, and unless such inventory should have been taken in twelve months prior to the date of the policy, one should be taken in detail in sixty days after said date or the policy should become null and void after the expiration of said sixty days, on demand of the company and return of the unearned premium; that the insured should keep a set of books clearly presenting a complete record of the business transacted, including all purchases, sales and shipments of stock, both for cash and credit, from the date of the inventory, and during the life of the policy; should keep such books and inventory securely locked in a fire-proof safe at night and at all times when the building was not open for business;

and failing to do this, should keep such books and inventory in a place not exposed to a fire which would burn the building; that the insured agreed and warranted it would produce said books and inventory for inspection of the company and upon failure to do so, the policy should become null and void; that it was part of the consideration of the' contract defendant should not be liable for an amount greater than three-fourths of the cash value of the property at the time of a loss, and, in case other insurance was on the property, only for its proportionate part of said three-fourths value; that the policy should be void if the insured concealed or misrepresented any facts or circumstances concerning the insurance or the subject of it, or if their interest in the property was not truly stated; or in case of any fraud or false swearing by them touching any matter relating to the insurance, whether before or after a loss, or if they should procure any other insurance on the property, whether valid or not; that they should give notice of a fire in sixty days after it occurred, with the particulars minutely set out in a proof of loss; that in the event of a disagreement as to the amount of a loss, the same should be ascertained by two competent and disinterested appraisers, the insured and the company each selecting one and those two an umpire. After setting out those terms of the policy, the answer avers F. P. Wrather & Company did not keep a set of books clearly and plainly presenting a record of the business transacted, including purchases, sales and shipments, both for cash and credit, from the date of the inventory; but, on the contrary, all purchases of goods, wares and merchandise were not entered on the books; that these purchases covered goods bought by the insured from local merchants for cash to the amount of at least three or four hundred dollars, and no record of said purchases were entered on the books of the firm; that all sales made after the date of the policy were not entered on the books, but a large

amount of sales were made in exchange for time-checks and coupons issued by F. W. Turner & Son, a saw mill concern doing business near Parma, and insured did not keep an account on their books with said Turner & Son; that the insured built a hotel at Parma about a month before the fire and the lumber used in it, amounting to $1,100, was furnished by Turner & Son and credited against time checks issued by the insured, and was not entered on the books of the firm; that in other cases goods were sold and delivered and the sales were not entered on the books, and in this way there were sales of merchandise during the first six months of 1905 to the amount of $200 which did not appear on the books of the firm.   The answer next alleges that after the fire, for the purpose of cheating and defrauding defendant and inducing it to pay the policy, the insured exhibited to the company what purported to be a ledger which on its face showed the insured had purchased $4,903 worth of goods from the firm of Wrather & Company of Oakton, Kentucky; said representations and ledger entries were false, as the insured knew, and were made for the purpose of cheating and defrauding plaintiff; the goods received from Wrather & Company were of much less value than $4,903, as the insured well know.   It is further alleged the insured did not take an inventory of the stock mentioned in the policy as therein provided, but during the negotiation for a settlement after the loss, showed defendant an alleged inventory claimed to have been taken January 2, 1905, and amounting to $8,367, which alleged inventory was false as the insured knew and showed a stock largely in excess of what was on hand; that after the fire the insured furnished a proof of loss in which they knowingly and fraudulently stated the sound value of the stock of merchandise was $10,910.52, and the same was a total loss; that this false statement was made to cheat and defraud defendant.   The answer then avers the insured violated the conditions of

the policy in regard to false swearing by stating in the verified proof of loss the value of the merchandise on hand at the time of the fire was $10,910.52, and including in the total a purchase from Wrather & Company, to the amount of $4,903, when they well knew the alleged purchase was much less; and by including in said total the false and fraudulent inventory of January 2, 1905, showing a stock on hand of $8,867; these false and fraudulent representations and oaths are charged to have avoided the policy. The answer also alleged the stock on hand at the time of the fire was greatly in excess of three-fourths of the value of the property destroyed. The next defense set up is the insured had other insurance, to-wit, $800 in the Queen Insurance Company and $3,500 in the Connecticut Fire Insurance Company, and defendant never had consented to said additional insurance. Another defense alleged is failure to comply with the policy in regard to an appraisement after the loss. Such is a summary of the answer, which is too long to be fully stated. In reply plaintiff denied the allegations of the answer, denied any fraud, misrepresentation or deception was practiced by F. P. Wrather & Company, or any of them; denied defendant acted in good faith in regard to the stipulation for an appraisement and arbitration, and averred defendant undertook, by means of said clause of the policy, to delay plaintiff in the collection of the demand. At the conclusion of the testimony defendant requested an instruction for a verdict in its favor and one that if the jury believed a witness in the case who was a member of F. P. Wrather & Company at the time of the fire, had knowingly sworn falsely in the case while giving evidence relating to the insurance and the loss, the verdict should be for defendant. Both those requests were refused. As far as appears no other instructions were asked. The jury returned a verdict for plaintiff for $1,500 and defendant appealed.

GOODE, J. (after stating the facts).—Some of the defenses set up in the answer were unsupported by evidence, and if there was evidence to support the other defenses, it was not presented in instructions which advised the jury if they found the facts were so and so, their verdict should be for defendant. The evidence was contradictory as to the value of the stock on hand when the fire occurred, some witnesses for defendant stating it was worth no more than $3,500 or $4,000. But there was ample proof for plaintiff the goods on hand at the time of the fire were worth far beyond those estimates. The assignment of the policy and all claims under it was duly proved as alleged in the petition, and that a proof of loss was furnished as required.

The agent of defendant who wrote the policy was notified when the policy was issued of other insurance on the property and not only did he make no objection on that score, but said plaintiffs were entitled to carry yet more insurance. After the date of the contract one member of the firm of F. P. Wrather & Company, A. A. Williams, sold his interest to the other members and Webb, defendant's agent, was notified of the fact, but neither asserted a forfeiture of the policy nor even objected to the change of ownership. A forfeiture will not be declared on said ground after loss. [Union Trust Co. v. Insurance Co., 79 Mo. App. 362; Millis v. Insurance Co., 95 Mo. App. 211; O'Brien v. Insurance Co., 95 Mo. App. 301; Hamilton v. Insurance Co., 94 Mo. 353.]

We know of no rule of law which would defeat a recovery by this plaintiff as assignee of the policy, because a person who was a member of the firm of F. P. Wrather & Company at the time of the fire, may have testified falsely on the witness stand. The stipulation in the policy that it should be void if the insured misrepresented or concealed any material fact or circumstance, or in case of fraud or false swearing touching a matter relating to the insurance, does not embrace the

instance of one member of 'the firm testifying falsely as a witness in an action; especially an action instituted by an assignee of the policy. To so hold would place the rights of a litigant at the mercy of an unscrupulous witness.

As regards the keeping of books and the taking of an inventory, the evidence for plaintiff tends to prove compliance with the policy. They kept a ledger and day books, and appear to have kept them with much detail. An invoice was taken January 2, 1905, and showed some $8,300 worth of goods on hand. There was also an inventory of the purchase made by the firm from Wrather & Company, of Oakton, Kentucky. Nothing was wrong about this matter except the purchase really amounted to $3,903.69, but in entering it on the ledger of F. P. Wrather & Company, it was posted as $4,903 by mistake.

A great deal of stress is laid on the fact that the firm sometimes sold checks or coupon books for five dollars and upwards to customers, and when these customers got merchandise on these checks or coupons, the sales were not entered on the books of the firm. The evidence goes to show the sales of the checks or coupons were entered at the time they occurred. It is out of the question to hold plaintiff should have been nonsuited for failure to keep books and take an inventory, for the evidence inclines very strongly to prove these conditions were fully met. Page after page of sales and purchases shown by the ledger were put in evidence. Defenses based on these matters, as on others, were proper subjects of hypothetical instructions.

The judgment is affirmed. All concur.